*37 OPINION OF THE COURT
Vincent E. Doyle, J.
Petitioner seeks habeas corpus relief discharging him from the custody of respondent Berbary, where he has remained since the maximum expiration of his sentence on December 22, 2001. By order to show cause granted November 8, 2002, this court directed thát the matter be heard in this court on December 3, 2002 at 10:00 a.m. At that time, the court heard counsel for the parties in support of their respective positions, and reserved decision in order to thoroughly review the parties’ submissions and the applicable law.
Petitioner’s application presents a case of apparent first impression involving application of the postrelease supervision provisions of Penal Law § 70.45. The essential facts are not in dispute. On July 7, 2000, petitioner was sentenced to a two-year determinate sentence upon his plea of guilty to sexual abuse in the first degree (Penal Law § 130.65), a class D felony. The sentence included a three-year period of postrelease supervision in accordance with the provisions of Penal Law § 70.45 (2). Petitioner was eligible for conditional release on September 8, 2001 and the maximum expiration date of his sentence was December 22, 2001. While otherwise eligible for conditional release, petitioner’s application therefor was denied on September 6, 2001 because he did not have “an offer of residence which has been approved by the Division of Parole.” Petitioner was subsequently advised that he would not be released upon the maximum expiration date of his sentence for the same reason.
While acknowledging that he remains subject to the mandated period of postrelease supervision, including conditions therefor set by the Board of Parole, petitioner maintains that his continued incarceration beyond the maximum expiration date of his determinate sentence is illegal. Respondents contend that as long as petitioner is subject to the postsupervision release requirements of Penal Law § 70.45, and the possibility of additional incarceration upon violation of the conditions thereof, his sentence has not been fully discharged and his confinement is thereby permitted until his release is approved by the Board of Parole.
The postrelease supervision requirements of Penal Law § 70.45 were enacted in 1998 as a component of the “Jenna’s Law” legislation. Among the stated purposes of the postsupervision requirements of the legislation was to provide a mecha *38 nism whereby offenders would be “successfully reintegrated into society.” The New York State Senate Memorandum in Support of the legislation states the following: “In addition to monitoring offender behavior, reintegration will be fostered by services to the offender, such as assistance with employment or housing * * * The term of post-release supervision ensures that monitoring and services are provided during the critical period of the transition from prison to the community.” (1998 McKinney’s Session Laws of NY, at 1493.)
In furtherance of these objectives, Penal Law § 70.45 (1) provides that “Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision” to commence “upon the person’s release from imprisonment to supervision by the division of parole” (Penal Law § 70.45 [5] [a]). This period is “a distinct but integral part of the determinate sentence” (Senate Mem in Support, 1998 McKinney’s Session Laws of NY, at 1489). Clearly, “post-release supervision” means exactly what the phrase describes: supervision of an offender following his release from prison.
This court finds nothing in either the language of the statute itself or in its legislative history to justify respondents’ reliance upon Penal Law § 70.45 as authority to hold petitioner in custody beyond the maximum expiration date of his prison sentence. The statute permits confinement beyond the offender’s prison sentence in two circumstances, neither of which obtains here: In the first situation, Penal Law § 70.45 (3) authorizes the Board of Parole to impose as a condition of post-release supervision the offender’s transfer to a residential treatment facility for a period not exceeding six months. The second situation applies to alleged violations of the terms and conditions of postrelease supervision, which “shall be initiated, heard and determined in accordance with the provisions of [Executive Law § 259-i (3), (4)].” (Penal Law § 70.45 [4].) Violations of postrelease supervision which are ultimately sustained result in additional imprisonment for at least six months up to the balance of the remaining period of postrelease supervision, not to exceed five years. (Penal Law § 70.45 [1].)
Respondents’ argument that petitioner’s continued confinement is authorized by the fact that he is subject to an undischarged term of postrelease supervision must fail. Although the requirement of postrelease supervision effectively enlarges the term of an offender’s sentence to the extent that he remains subject to the supervision of the Board of Parole and the possibility of additional incarceration upon a violation *39 of the terms of his release, it does not permit the Board of Parole to unilaterally transform a two-year determinate sentence into a three-year or five-year determinate sentence based upon an inchoate or anticipatory violation.
Moreover, while justifying its refusal to release petitioner upon his inability to proffer acceptable living arrangements, it appears that the Board of Parole has done little, if anything, to assist him in this regard. Far from rendering the assistance envisioned by the Legislature in its Memorandum in Support of the legislation, the Board of Parole has instead shifted the burden to petitioner to make acceptable arrangements from the confines of prison.
Based upon the foregoing, the court finds and concludes that petitioner’s continued imprisonment is unlawful, and hereby orders that he be released from custody immediately.
Mindful of the fact that, at least as of the date of oral argument of the writ, the Board of Parole had not approved any prospective residence or living arrangements for petitioner, the court must ensure that granting the writ will not prove to be a pyrrhic victory for petitioner. Consequently, to the extent necessary to effectuate the resolution ordered herein, the court will treat petitioner’s application as one also seeking relief pursuant to CPLR article 78 (see, CPLR 103 [c]; People ex rel. Brown v New York State Div. of Parole, 70 NY2d 391 [1987]; Fritz v Huntington Hosp., 39 NY2d 339, 347 [1976]).
Executive Law § 259-i (2) (b) provides that persons released to postrelease supervision shall be in the legal custody of the Division of Parole until expiration of the postrelease supervision period. This authority, of course, implicates a concomitant responsibility to the person supervised. Thus, for example, Executive Law § 259-a (6) and 9 NYCRR 8000.1 (a) (5) require the Division of Parole to assist those on parole, conditional release or postrelease supervision in securing employment and/or educational and vocational training. (See also, People v Huntley, 43 NY2d 175, 181 [1977].)
With respect to postrelease supervision in particular, the Legislature clearly contemplated that in addition to monitoring the offender’s behavior, the Division of Parole would facilitate his successful reintegration into the community by providing “assistance with employment or housing.”
In this instance, as noted, the Division of Parole appears to have done virtually nothing to assist petitioner with obtaining acceptable housing or living arrangements following their *40 rejection of the various proposals he advanced. Lest there be any doubt about the Division of Parole’s responsibilities, this court holds that it has an affirmative duty to provide meaningful, proactive assistance to petitioner in his effort to obtain housing and/or employment which comports with the terms and conditions of his postrelease supervision.
In his moving papers and at oral argument, counsel for petitioner set forth a proposal whereby petitioner would obtain employment as a plumber’s helper in East Greenbush, New York, through the efforts of his grandfather, Richard Lasch. Assistance with living arrangements would be forthcoming from the grandfather as well as extended family members until such time as petitioner becomes able to sustain himself independently. This proposal appears to be satisfactory at least on an interim basis. Should the Division of Parole subsequently determine that this arrangement or any arrangement proffered by an inmate such as the petitioner is unacceptable, it shall immediately notify petitioner and his counsel of the specific objections to such an arrangement. Thereafter, the Division of Parole shall take immediate and meaningful action to assist petitioner in securing acceptable housing and employment arrangements.
In summary, the writ of habeas corpus is granted and the petitioner is ordered released immediately upon his attorney’s or his designee’s appearance at the Collins Correctional Facility with a copy of this decision and order. Counsel for the petitioner is directed to furnish to the institution and the Attorney General’s Buffalo office and the New York State Board of Parole the address where the petitioner shall reside, the occupants of said residence, the name of the prospective employer and the date of employment and the hours thereof.
Should there be any need for clarification of this order, application may be made directly to this court, which will retain jurisdiction of so much of the matter as has been converted to an article 78 proceeding.
This decision shall constitute the order of the court and no other or further order shall be required.