[9 NYS3d 761]

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS JOHNSON, Petitioner, v SUPERINTENDENT, FISHKILL CORRECTIONAL FACILITY, et al., Respondents.

Supreme Court, Dutchess County, March 3, 2015

## APPEARANCES OF COUNSEL

*The Legal Aid Society*, New York City (*Seymour James* of counsel), for petitioner.

*Eric T. Schneiderman, Attorney General*, Poughkeepsie (*Barry Kaufman* of counsel), for respondents.

### OPINION OF THE COURT

PETER M. FORMAN, J.

In 2007, relator Thomas Johnson was convicted after trial of one count of assault in the second degree, a class D violent felony, in violation of Penal Law § 120.05 (2). That conviction arose from an incident in which relator grabbed the victim from behind, dragged her into a bedroom, choked her with his hands and with a leather belt, and caused her to lose consciousness and suffer physical injuries. On September 10, 2007, relator was sentenced, as a second violent felony offender, to a determinate term of imprisonment of seven years. On September 13, 2007, relator's sentence was amended to add a five-year period of postrelease supervision.

On November 7, 2007, relator entered a plea of guilty by superior court information to one count of sexual abuse in the

second degree, a class A misdemeanor, in violation of Penal Law § 130.60 (2). That conviction arose from an alleged six-month period of sexual abuse involving a five-year-old girl. Relator was sentenced to a one-year term of imprisonment upon that conviction. Relator was also designated a level three sex offender pursuant to the New York State Sex Offender Registration Act (Correction Law art 6-C).

On August 15, 2013, relator was released to postrelease supervision upon the maximum expiration of his prison term. On September 11, 2013 (i.e., less than one month after his release), relator was declared delinquent because he temporarily changed his residence without notifying his parole officer. On September 16, 2013, a parole violation warrant was executed and relator was returned to custody pending a final revocation hearing. Upon the completion of that hearing, a final declaration of delinquency was entered against relator, and a 12-month time assessment was imposed.

That 12-month assessment expired on September 16, 2014. However, the Department of Corrections and Community Supervision (the Department) did not release relator on that date because he did not have a postrelease residence that complied with the requirements of the Sexual Assault Reform Act of 2000 (SARA). Relator remained in custody at the Ogdensburg Correctional Facility until November 17, 2014, when he was transferred to the residential treatment facility (RTF) at the Fishkill Correctional Facility. Relator remains in custody at the Fishkill RTF pending identification of an approved, SARA-compliant residence.

Relator now seeks habeas corpus relief on the grounds, inter alia, that he is entitled to be released to the Bellevue men's homeless shelter pending his reassignment to a SARA-compliant homeless shelter or another form of SARA-compliant housing. Relator also asserts that the Department does not have the statutory authority to place him at the Fishkill RTF more than six months after his prison term has expired, and that his placement at the Fishkill RTF cannot be deemed to have restored him to postrelease supervision. Finally, relator asserts that the Fishkill RTF does not qualify as an RTF because it is not a community-based residence, it is not in or near the community where relator intends to live upon his release, and it does not provide the services offered by a legitimate RTF.

The Department opposes this application on the grounds, inter alia, that SARA prohibits the Department from approv-

ing the release of a level three sex offender to a noncompliant residence such as the Bellevue shelter. The Department also asserts that Correction Law § 73 expressly authorizes the Commissioner to use an RTF as a residence for a person who is on postrelease supervision, and that the six-month period identified in Penal Law § 70.45 (3) does not apply when the Commissioner places a level three sex offender in an RTF because the offender has failed to obtain SARA-compliant housing. The Department also disputes relator's claim that the Fishkill RTF is not a legitimate RTF. Finally, the Department asserts that habeas corpus relief is not available because relator is not entitled to immediate release.

## Discussion

When a level three sex offender is subject to a period of postrelease supervision, Executive Law § 259-c (14) compels the Department to impose a mandatory condition of release prohibiting the offender from living within 1,000 feet of any public or private elementary, parochial, intermediate, junior high, vocational or high school ("the school grounds condition"). The statute does not exempt homeless shelters from compliance with the school grounds condition.[1]

It is undisputed that the Bellevue shelter is less than 1,000 feet from a SARA-protected school. Nonetheless, relator seeks an order compelling the Department to release him to the Bellevue shelter because, until recently, the Department had placed registered sex offenders at that shelter despite the fact that it is not SARA-compliant.[2]

Relator essentially seeks to estop the Department from curing its prior noncompliance with the school grounds condition. However, it is well settled that the doctrine of estoppel does not prevent a governmental entity from correcting its past errors. (*Oxenhorn v Fleet Trust Co.*, 94 NY2d 110, 116 [1999]; *Matter of Parkview Assoc. v City of New York*, 71 NY2d 274, 282 [1988]; *Morley v Arricale*, 66 NY2d 665, 667 [1985].) This does not suggest that the Department's prior policy of placing level three sex offenders at the Bellevue shelter is irrelevant. Rather, when an agency adopts a new policy that seeks to rectify a prior, erroneous interpretation of the law, that new

---

1. Executive Law § 259-c (14) was enacted as part of SARA.

2. Indeed, relator was placed at the Bellevue shelter upon his release from custody on August 15, 2013, and was only returned to custody after he changed that residence without notifying his parole officer.

policy must be supported by the statute's language and legislative intent. (*Matter of United Univ. Professions v State of New York*, 36 AD3d 297, 302 [3d Dept 2006]; *see also Matter of Richardson v Commissioner of N.Y. City Dept. of Social Servs.*, 88 NY2d 35, 39-40 [1996].)

■ Here, the plain language of the school grounds condition precludes the Department from placing level three sex offenders at the Bellevue shelter. The Department's current refusal to house level three sex offenders at that shelter is entirely consistent with SARA's legislative intent of protecting the public by prohibiting sex offenders from entering school grounds. Therefore, relator's request for an order compelling the Department to release him to the Bellevue shelter pursuant to an abandoned policy that violated the mandatory statutory school grounds condition is denied.

Relator's second argument—that the Department cannot place him in an RTF more than six months after his prison term has expired—relies on Penal Law § 70.45 (3). Specifically, that statute authorizes the parole board to impose a condition of postrelease supervision requiring a person to be held in a residential treatment facility for a period of time not exceeding the six-month period immediately following his release from the underlying term of imprisonment.

Correction Law § 73 (10) authorizes the Commissioner to use an RTF as a residence for a person who is on postrelease supervision. Although that statute does not incorporate the six-month time limit set forth in Penal Law § 70.45, relator argues that Penal Law § 70.45 would be rendered meaningless unless a six-month time limit was also applied to the Commissioner's authority under Correction Law § 73.

However, neither Correction Law § 73 nor Penal Law § 70.45 can be read in a vacuum, particularly with respect to level three sex offenders. Specifically, Executive Law § 259-c (14) compels the Department to impose the school grounds condition on all level three sex offenders during their entire period of postrelease supervision. By contrast, Penal Law § 70.45 applies to all persons who are eligible for postrelease supervision, not just level three sex offenders. Also, Penal Law § 70.45 does not impose a mandatory condition. Rather, it grants the parole board the discretionary authority to require that a person

receive the services offered by an RTF before being released into the community.[3]

Recognizing that, by definition, an RTF is still a correctional facility (Correction Law § 2 [6]; 7 NYCRR 1.5 [m]), the legislature placed a temporal limit on the parole board's discretionary authority to compel a person to start his post-release supervision in the continued custody of the Department. Therefore, although Correction Law § 73 (10) does not place any time limit on the Commissioner's authority to use an RTF to house a person who is on postrelease supervision, the six-month restriction contained in Penal Law § 70.45 still applies to a person who has been placed in an RTF pursuant to a discretionary decision of the parole board.

Unlike a discretionary RTF condition imposed pursuant to Penal Law § 70.45, the mandatory school grounds condition contained in Executive Law § 259-c (14) reflects a legislative determination that all level three sex offenders shall be precluded from entering school grounds for their entire period of postrelease supervision. As previously noted, SARA's legislative intent is to protect the public by prohibiting level three sex offenders from entering school grounds. Correction Law § 73 (10) expressly authorizes the Commissioner to use an RTF as a residence for any person on postrelease supervision. Reading Correction Law § 73 (10) as authorizing the Commissioner to use an RTF as a residence for a level three sex offender who is unable to secure compliant housing is entirely consistent with SARA's statutory purpose, and does not conflict with the six-month time limit that is applicable to discretionary RTF conditions imposed by a parole board for a different purpose and under entirely different circumstances.

This statutory construction is also consistent with the approach that the Appellate Division has taken in an analogous situation involving sex offenders who are being held past their conditional release date. For instance, in *Matter of Monroe v Travis* (280 AD2d 675 [2d Dept 2001]), the Division of Parole

3. For instance, the program offered at the Edgecombe RTF, located in New York County, is designed for persons in need of substance abuse treatment. The program offered at the Lincoln RTF, also located in New York County, is designed for persons who are eligible for temporary work release. The program offered at the Queensboro RTF, located in Queens County, is designed for persons who are within 90 days of their approved release dates. The Fishkill RTF provides therapeutic education and community reintegration services that are designed for sex offenders. These sex offender services are not offered at the New York City facilities. (McGrath ¶¶ 12-20.)

refused to release a sex offender when he was unable to find an approved residence by his conditional release date, despite a prior Division policy of releasing inmates to a homeless shelter when no other housing was available. The Second Department held that the Division had the statutory authority to impose the acceptable residence condition and that, despite its prior policy, the Division retained the discretion to require that the inmate satisfy this condition before granting his request for conditional release (*id.* at 675-676; *see also Matter of Boss v New York State Div. of Parole*, 89 AD3d 1265 [3d Dept 2011]; *Matter of Breeden v Donnelli*, 26 AD3d 660 [3d Dept 2006]; *People ex rel. Beam v Hodges*, 286 AD2d 936 [4th Dept 2001]; *People ex rel. Wilson v Keane*, 267 AD2d 686 [3d Dept 1999]).

█ Here, the school grounds condition is a mandatory condition that the Department is statutorily obligated to impose. Despite the Department's prior, ill-considered policy of releasing level three sex offenders to the Bellevue shelter when SARA-compliant housing was not available, the Department remains vested with the statutory authority to use the Fishkill RTF as relator's residence until SARA-compliant housing is found.[4]

A number of habeas corpus petitions filed by level three sex offenders similarly situated to relator have also recently been denied by trial judges sitting in Dutchess County and Sullivan County (*see People ex rel. Anderson v Superintendent, Fishkill Corr. Facility*, Sup Ct, Dutchess County, Nov. 17, 2014, Pagones, J., index No. 3878/2014; *People ex rel. Vega v Superintendent, Fishkill Corr. Facility*, Sup Ct, Dutchess County, Oct. 27, 2014, Sproat, J., index No. 3759/2014; *People ex rel. Jones v Superintendent, Sullivan Corr. Facility*, Sup Ct, Sullivan County, Oct. 31, 2014, LaBuda, J., index No. 2015/2014; *People ex rel. Colon v Superintendent, Woodbourne Corr. Facility*, Sup Ct, Sullivan County, Sept. 25, 2014, LaBuda, J., index No.

---

4. The Department asserts that it is making good faith efforts to facilitate the search for SARA-compliant housing. For instance, relator meets with an offender rehabilitation coordinator biweekly to discuss potential housing options. The Department has also partnered with the City Department of Homeless Services to obtain beds in the four SARA-compliant homeless shelters operated in New York City. When one of those spaces becomes available, it is offered to the SARA parolee who has been in an RTF for the longest period of time. The Department continues to explore other options to expand SARA-compliant housing opportunities, as reflected by its recent agreement with a veteran's organization that will provide housing for SARA parolees who are veterans.

1427/2014; *People ex rel. White v Superintendent, Woodbourne Corr. Facility*, 45 Misc 3d 1202[A], 2014 NY Slip Op 51422[U] [Sup Ct, Sullivan County 2014]). The court agrees with and adopts the reasoning provided by these judges in their respective decisions.

Nonetheless, relator argues that his request for habeas corpus relief is supported by a decision that was recently issued by another trial judge sitting in Dutchess County (*see People ex rel. Scarberry v Connolly*, Sup Ct, Dutchess County, Nov. 21, 2014, Rosa, J., index No. 3963/2014). In *Scarberry*, a habeas corpus petition was brought by a SARA parolee who had been housed in the Fishkill RTF for more than six months after the termination of his prison sentence. Judge Rosa did not grant the petition for habeas corpus relief, but rather converted the petition to a CPLR article 78 proceeding. After conducting a hearing to determine whether the Fishkill RTF complied with the statutory definition of an RTF, Judge Rosa ordered that the petitioner be transferred to a compliant RTF. This order directing that petitioner be transferred to another RTF, despite the fact that he had already been housed in the Fishkill RTF for a period of time exceeding the six-month time limit imposed by Executive Law § 259-c (14), does not support relator's request for habeas corpus relief in this proceeding.[5]

Relator also asserts that the Fishkill RTF is not a "legitimate RTF" because it does not satisfy the statutory criteria set forth in Correction Law § 73. It is undisputed that the Department has designated Fishkill Correctional Facility as a residential treatment facility. (7 NYCRR 100.90; Dept of Corr & Community Supervision Directive No. 0051 [I] [Nov. 12, 2014].) Even if relator was able to establish that the Fishkill RTF is not operated as a residential treatment facility, he would not be entitled to immediate release. Rather, at most, relator would be entitled to an order directing the Department to transfer him to another RTF. Consequently, the request for habeas corpus relief is inappropriate, and the petition should be dismissed on that basis. (*People ex rel. Price v West*, 30 AD3d 852, 853 [3d Dept 2006]; *People ex rel. Vasquez v Filion*, 22

---

5. Relator also relies on an Erie County trial court decision (*People ex rel. O'Connor v Berbary*, 195 Misc 2d 36 [Sup Ct, Erie County 2002]). However, that case did not address the Commissioner's authority to house an inmate in an RTF pursuant to Correction Law § 73 (10), nor did it address the mandatory school grounds condition imposed by Executive Law § 259-c (14).

AD3d 991, 992 [3d Dept 2005]; *People ex rel. Wilson v Hanslmaier*, 232 AD2d 702 [3d Dept 1996]).[6]

Finally, this court has the power to convert this habeas corpus proceeding into an article 78 proceeding. However, relator was well aware that the habeas corpus petition was converted to an article 78 petition in *Scarberry* (a conversion that the petitioner opposed, and sought to rescind by motion to reargue). Armed with this knowledge, relator chose to prosecute his claims by a petition seeking a writ of habeas corpus. Relator also has not asked the court to convert his habeas corpus petition to an article 78 petition. Therefore, under these circumstances, the court declines to effect such a conversion upon its own initiative (*see People ex rel. Daniels v Beaver*, 303 AD2d 1025 [4th Dept 2003]; *People ex rel. Emm v Hollins*, 299 AD2d 850 [4th Dept 2002]; *People ex rel. Travis v Coombe*, 219 AD2d 881 [4th Dept 1995]). Because relator's remaining claims are without merit, it is hereby ordered, adjudged and decreed that the petition is dismissed.

---

6. Relator has cited two trial court decisions, decided in Franklin County and Columbia County, which addressed the issue of whether a particular RTF satisfied the relevant statutory criteria in the context of a habeas corpus proceeding. While the decisions of a court of coordinate jurisdiction are entitled to respectful consideration, they are not binding. (*Matter of East Riv. Realty Co., LLC v New York State Dept. of Envtl. Conservation*, 22 Misc 3d 404, 413 [Sup Ct, NY County 2008], *affd* 68 AD3d 564 [1st Dept 2009]; *Matter of DaimlerChrysler Corp. v Spitzer*, 6 Misc 3d 228, 236 [Sup Ct, Albany County 2004], *affd* 26 AD3d 88 [3d Dept 2005], *affd* 7 NY3d 653 [2006].) Because relator would not be entitled to immediate release if the petition was granted, this court declines to adopt the approach taken in those two decisions.