# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 73
The People &c. ex rel. Chance
McCurdy,
    Appellant,
    v.
Warden, Westchester County
Correctional Facility, &c., et
al.,
    Respondents.

Elon Harpaz, for appellant.
Ester Murdukhayeva, for respondents.
Center for Appellate Litigation; Prisoners' Legal Services of New York, amici curiae.

STEIN, J.:

This appeal presents us with a question of statutory interpretation. Penal Law § 70.45 (3) provides that, "notwithstanding any other provision of law, the board of parole may impose as a condition of postrelease supervision (PRS) that for a period not exceeding six months immediately following release from the underlying term of imprisonment the person be transferred to and participate in the programs of a residential treatment facility (RTF)." Correction Law § 73 (10), in turn, authorizes the Department of Corrections and Community Supervision (DOCCS) "to use any [RTF] as a residence for persons who are

- 1 -

on community supervision," which includes those on PRS (*see* Correction Law § 2 [31]). The question before us is whether Correction Law § 73 (10) authorizes DOCCS to provide temporary housing in an RTF to sex offenders subject to the mandatory condition set forth in the Sexual Assault Reform Act (SARA) (*see* Executive Law § 259–c [14]) after the six-month period specified in Penal Law § 70.45 (3) has expired but before the offender on PRS has located compliant housing. We conclude that it does.

I.

In 2007, petitioner pleaded guilty to criminal sexual act in the first degree and was sentenced to five years in prison to be followed by five years of PRS. In 2011, while serving PRS, petitioner was charged with committing additional crimes and ultimately pleaded guilty to attempted sexual abuse in the first degree. For that crime, he was sentenced to three years in prison to be followed by five years of PRS. Petitioner was also adjudicated a level three sex offender, and it is undisputed that he is subject to the restriction contained in SARA, which prohibits him from residing within 1,000 feet of school grounds (*see* Executive Law § 259–c [14]; Penal Law § 220.00 [14]).

At the time petitioner was received into DOCCS' custody on his attempted first-degree sexual abuse conviction, he had served sufficient time in a local jail to reach the maximum expiration date of the sentence imposed on that conviction. Therefore, he was designated for release to PRS. However, petitioner was unable to identify SARA-compliant housing. The Parole Board directed that petitioner be transferred to Fishkill RTF, pursuant to Penal Law § 70.45 (3), until a residence was approved for him that was

verified to be located outside of "school grounds" as defined by SARA. On December 1, 2014, petitioner moved to a SARA-compliant residence in Far Rockaway, New York.

In January 2015, while on PRS, petitioner violated curfew, leading to revocation of his PRS status and imposition of 12 months of delinquency time. However, the Parole Board directed that, if petitioner completed a 90-day drug treatment program, he would be released back to PRS. Petitioner completed the drug treatment program in June 2015, but he again failed to identify SARA-compliant housing. Pursuant to Correction Law § 73 (10), DOCCS designated Fishkill RTF as petitioner's residence until he was able to identify adequate housing. In September 2015, petitioner was transferred from Fishkill RTF to Queensboro RTF, which was closer to his proposed future residence in New York City. The following month, while en route to a work crew assignment in New York City, petitioner jumped out of a DOCCS van, stole a bicycle, and fled. He was apprehended, returned to DOCCS' custody, and charged with violating the terms of his PRS.

While awaiting a final parole revocation hearing, petitioner commenced this proceeding against both respondent Warden of Westchester County Correctional Facility and DOCCS, seeking a writ of habeas corpus and arguing that DOCCS lacked the authority to assign him to an RTF following his completion of the 90-day drug treatment program. Petitioner asserted that, in fact, he had never been released to PRS after completing the drug treatment program because RTFs are prisons and, having never been released on PRS, he could not have violated PRS conditions. Petitioner further contended that Correction Law § 73 (10), when read in conjunction with Penal Law § 70.45 (3), does not confer authority on DOCCS to send a PRS violator to an RTF after the six-month period under

Penal Law § 70.45 (3) has expired.  Petitioner, who is indigent, admitted that DOCCS had no authority to release him in violation of SARA's residency requirement, but maintained that he should be placed at the top of the waiting list for a bed in a SARA-compliant homeless shelter.

Supreme Court converted the habeas corpus proceeding to a CPLR article 78 proceeding and granted the petition solely to the extent of ordering DOCCS to immediately transfer petitioner back to Queensboro RTF and place him in a SARA-compliant New York City Department of Homeless Services facility, or on a waitlist—based on the July 2015 date that he was last transferred to an RTF—for such facility if no space was immediately available.  The court concluded that conversion to an article 78 proceeding was necessary in light of petitioner's concession that he was not entitled to immediate release because he had not obtained a SARA-compliant residence and DOCCS lacked the authority to release him in violation of SARA.  Turning to the merits, the court determined that Correction Law § 73 (10) did not authorize DOCCS to assign petitioner to Fishkill RTF following completion of the 90-day drug treatment program.  The court reasoned that, because Penal Law § 70.45 (3) limits DOCCS's authority to impose transfer to an RTF as a condition of PRS only "for a period not exceeding six months immediately following release from the underlying term of imprisonment," DOCCS's reliance on Correction Law § 73 (10) as authority to use an RTF as a residence for the otherwise homeless petitioner beyond that six-month period rendered the language of section 70.45 (3) meaningless.  Thus, the court held that DOCCS's July 2015 determination to assign petitioner to an RTF was "a nullity" and petitioner could not "be found . . . in violation of that illegally imposed condition."

The Appellate Division unanimously reversed, denied the petition, and dismissed the proceeding (164 AD3d 692 [2d Dept 2018]).[1]  The Court concluded that there was no conflict between Penal Law § 70.45 (3) and Correction Law § 73 (10) (164 AD3d at 694). In reaching that conclusion, the Court noted that the Correction Law definition of "community supervision" encompasses individuals serving time on PRS, and that DOCCS is authorized, pursuant to Correction Law § 73 (10), "'to use any [RTF] as a residence for persons who are on community supervision'" (*id.*).  In contrast, Penal Law § 70.45 (3) "permits DOCCS to *require* an offender subject to a term of [PRS] to spend the first six months of [that PRS term] in [RTF] housing as a transitional period prior to re-entry into the community" (*id.* [emphasis added]).  Thus, the Court held, "construing the relevant statutes together," the six-month limitation provided in Penal Law § 70.45 (3) does not curtail DOCCS's authority pursuant to Correction Law § 73 (10) to temporarily place an offender in an RTF while the offender is serving PRS if such person is unable to locate SARA-compliant housing (*id.*).  The Court cautioned that "it is clear that DOCCS's

---

[1] While DOCCS' appeal was pending at the Appellate Division, the Parole Board issued a final revocation determination, finding petitioner guilty of violating the terms of his PRS and imposing a 24-month time assessment. When petitioner completed his time assessment in October 2017, he was restored to PRS, but he was again unable to identify SARA-compliant housing, so DOCCS transferred him to Green Haven RTF. In June 2018, petitioner was released to a community-based residence to complete his term of PRS. Within weeks of his release, petitioner was arrested and charged with, among other things, robbery in the first degree, criminal possession of a firearm in the second degree, and assault in the second degree; he is currently incarcerated on those charges. Although this proceeding is, therefore, moot, we conclude that the mootness exception applies for the reasons stated in *Matter of Gonzalez v Annucci* (32 NY3d 461, 470-471 [2018]).

authority to keep such an offender in [RTF] housing ends when the offender successfully identifies or otherwise obtains SARA-compliant community housing" (*id.* at 694-695).

This Court subsequently granted petitioner's motion for leave to appeal (32 NY3d 1084 [2018]).

## II.

"[T]he clearest indicator of legislative intent is the statutory text;" thus, "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*People v Anonymous*, 34 NY3d 631, 636 [2020]; *see Desrosiers v Perry Ellis Menswear, LLC*, 30 NY3d 488, 494 [2017]). We are also guided by the principles that "'a statute . . . must be construed as a whole and that its various sections must be considered together and with reference to each other'" (*Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712, 721 [2012], quoting *People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]). Particularly relevant to this appeal, "[c]ourts must 'harmonize the various provisions of related statutes and [ ] construe them in a way that renders them internally compatible'" (*Matter of Dutchess County Dept. of Social Servs. v Day*, 96 NY2d 149, 153 [2001], quoting *Matter of Aaron J.*, 80 NY2d 402, 407 [1992]).

It is not disputed that, when petitioner reached the maximum expiration date of his sentence and was released to community supervision, he was subject to the residency restriction of SARA set forth in Executive Law § 259-c (14). In that regard, Penal Law § 70.45 (3) requires the Board of Parole to "establish and impose conditions of [PRS] in the same manner and to the same extent as it may establish and impose conditions in accordance with the [E]xecutive [L]aw upon persons who are granted parole or conditional

release; provided that, notwithstanding any other provision of law," the Board may require, as a condition of PRS, that a person on PRS be transferred to an RTF for up to the first six months after release from the underlying determinate term of imprisonment. An RTF is defined as a "correctional facility consisting of a community based residence in or near a community where employment, educational and training opportunities are readily available for persons who are on parole or conditional release and for persons who are or who will soon be eligible for release on parole who intend to reside in or near that community when released" (Correction Law § 2 [6]).

Correction Law § 73 (1) authorizes DOCCS to "transfer any inmate of a correctional facility who is eligible for community supervision or who will become eligible for community supervision within six months after the date of transfer or who has one year or less remaining to be served under [such inmate's] sentence to [an RTF]," and provides that "[w]hile outside the facility [such inmate] shall be at all times in the custody of [DOCCS] and under its supervision." "[I]nmate[s]" so transferred to an RTF may be transferred to another correctional facility at any time and for any reason (*id.* § 73 [5]), and they may be granted parole—another form of community supervision—"in accordance with provisions of law that would apply if the person were still confined in the facility from which [such person] was transferred" (*id.* § 73 [8]). In addition, the provisions of the Correction Law "relating to good behavior allowances and conditional release shall apply to behavior of inmates while assigned to [RTFs]" (*id.* at 73 [7]).

RTFs also must have "[p]rograms directed toward the rehabilitation and total reintegration into the community of persons transferred to" them; "[e]ach inmate" is

assigned a program (*id.* § 73 [3]).  Notably, Penal Law § 70.45 (3) authorizes DOCCS to require, not only transfer of a person on PRS to an RTF for up to the first six months of the PRS term, but also that the person "participate in the programs of [an RTF]" during that six-month period.  In contrast, Correction Law § 73 (10) permits DOCCS "to use any [RTF] *as a residence* for persons who are on community supervision" (emphasis added), which includes those on PRS and parole (*see id.* § 2 [31]).  "Persons who reside in such a facility shall be subject to conditions of community supervision imposed by the board" (*id.* § 73 [10]).  Subdivision (10) does not require all RTF residents who are on community supervision—as opposed to inmates who are "eligible for community supervision" (*id.* § 73 [1])—to be assigned to an RTF program.

Petitioner and the dissenters assume that Correction Law § 73 (10) permits DOCCS to confine a person on PRS in the custodial setting of a correctional facility—indeed, that it provides authorization for continued detention, as an inmate, of anyone on community supervision, including PRS—for as long as that person is unable to obtain SARA-compliant housing, up to the remainder of the PRS term.  Based on that reading, they conclude that section 73 (10) directly conflicts with Penal Law § 70.45 (3), which concededly authorizes a period of confinement in an RTF upon commencement of the PRS term for a maximum of six months (*see People v Melio*, 304 AD2d 247, 250 [2003] ["(P)ursuant to Penal Law § 70.45 (3), the Board of Parole may require a defendant to be transferred to a residential treatment facility immediately upon release from incarceration, thereby increasing the possible period of . . . confinement."]).   The flaw in petitioner's argument and the dissent's rationale is the failure to recognize the distinction in Correction

Law § 73 between confinement in an RTF as an inmate subject to its programs, as opposed

to the use of an RTF as a residence.[2]  Construing these two statutes related to the same

subject matter together—and considering Correction Law § 73 (10) with reference to the

other subdivisions of that section—there is no conflict between the language of Penal Law

§ 70.45 (3) and Correction Law § 73 (10) that requires us to harmonize the two by reading

the Penal Law's temporal limitation as superseding an inconsistency in the Correction

Law.[3]

---

[2]  In assuming that that, under section 73 (10), the authority to indefinitely confine those on parole or conditional release has existed since the statute was enacted in 1970, petitioner maintains that PRS "is different" because those other forms of community supervision must be earned, while PRS commences by operation of law immediately upon release from prison.  Unlike petitioner, the dissent offers no explanation for why PRS would be treated more leniently than any other form of community supervision.  Moreover, although the dissenters merely assume that "Correction Law § 73 (10) was originally intended to permit long-term confinement of individuals who are on community supervision" (dissenting op at 4), they neither acknowledge the distinction that Correction Law § 73 makes between inmates and residents of an RTF nor offer any viable alternative interpretation of the statute.

[3]  Petitioner further argues that, before the Department of Correctional Services and Division of Parole were merged in 2011, there was a statutory gap because Penal Law § 70.45 (3) gave the Board of Parole authorization to mandate placement in an RTF, but the Department of Correctional Services (which controlled RTFs) had no authority to actually place an individual on PRS in an RTF.  He contends that, when DOCCS was formed, Correction Law § 73 (10) was amended to give DOCCS the authority to place individuals serving PRS in RTFs.  This argument is both unsupported by any legislative history and ignores the fact that courts long recognized, prior to 2011, that the Department of Corrections had the authority to transfer those on PRS to RTFs (*see e.g. People v Catu*, 4 NY3d 242, 245 [2005] ["(P)ostrelease supervision may require up to six months of participation in a residential treatment facility immediately following release from the underlying term of imprisonment"]).  Moreover, although we agree with the dissenters that nothing in the legislative history of the 2011 amendment evinces an intent to alter the length of time that DOCCS may require a sex offender to remain in an RTF under Penal Law § 70.45 (3), there is nothing in the record or case law cited by petitioner and the dissent to either indicate that the Department of Correctional Services routinely placed sex offenders

The Penal Law authorizes the Board of Parole to impose, as a condition of PRS, a mandatory transfer of a person on PRS to an RTF for a period of up to six months; that period must commence immediately following initial release to PRS (Penal Law § 70.45 [3]). A sex offender subject to SARA who is serving PRS in an RTF under Penal Law § 70.45 (3) must remain in the RTF for the period of time specified by the Parole Board regardless of whether that person has available SARA-compliant housing. Moreover, just as an "inmate of a correctional facility who is eligible for community supervision or who will become eligible for community supervision within six months after the date of transfer or who has one year or less remaining to be served under his or her sentence" (Correction Law § 73 [1]) is assigned "[p]rograms directed toward the rehabilitation and total reintegration into the community" (*id.* at § 73 [3]), Penal Law § 70.45 (3) expressly authorizes the Board of Parole to require an offender to participate in those same programs for the first six months of such offender's PRS term.[4] In other words, the language of section 70.45 (3) provides the Board of Parole authority to direct that an individual on PRS be transferred to an RTF and assigned the type of programming normally provided to inmates who are not on community supervision.

In contrast, Correction Law § 73 (10)—which may apply, not only during the first six months, but during the entire term, of community supervision whenever an individual

---

in non-compliant shelters other than Bellevue men's shelter or to establish that the agency took the "position that shelter housing was exempt from SARA" (dissenting op at 6).

[4] The express statutory purpose of the programming mandated by Correction Law § 73 (3) is rehabilitation and reintegration into the community, mirroring the purpose of Penal Law § 70.45 (3) (*see* Letter from R. Giuliani, Bill Jacket, L 1998, ch 1 at 12).

on PRS lacks a suitable residence—has long been read as authorizing DOCCS to provide a temporary residence to those subject to community supervision *who lack approved housing* (*see People ex rel. DeFlumer v Strack*, 212 AD2d 555, 555 [1995], *lv dismissed* 85 NY2d 966 [1995]). As this Court recently recognized in *Gonzalez*, RTF residents and inmates are accorded different rights under Correction Law § 73 (*see* 32 NY3d at 475 ["[T]he record demonstrates that petitioner was accorded the rights of a resident of an RTF, as opposed to an inmate."]). For example, those individuals temporarily residing in an RTF under Correction Law § 73 (10) are subject only to the conditions of community supervision imposed on them; unlike Penal Law § 70.45 (3), Correction Law § 73 (10)—on its face—does not require those residents to be subject to the programs of an RTF.[5] Moreover, while "[t]he state board of parole may grant parole to any *inmate* of a residential treatment facility at any time after [the inmate] becomes eligible therefor [and] [s]uch parole shall be in accordance with provisions of law that would apply if the person were still confined in the facility from which he or she was transferred" (Correction Law § 73

---

[5] The nature of the difference in the rights accorded to inmates and residents of an RTF is not a question presented to us on this appeal. Furthermore, to the extent petitioner argues and the dissent suggests that DOCCS did not use Queensboro RTF as a residence for him and simply continued his imprisonment as an inmate there (dissenting op at 8), not only is there "insufficient record evidence to establish that . . . the conditions of his placement at that facility were in violation of the agency's statutory or regulatory obligations" (*Gonzalez*, 32 NY3d at 475), but petitioner did not raise before the courts below the issue of whether DOCCS accorded him the rights of an RTF resident under Correction Law § 73 (10). Our decision should not be read to address the issue of whether DOCCS may, as a matter of discretion in an individual case, impose participation in RTF programming as a condition for a period longer than the first six months of PRS; that issue is similarly not before us.

[8] [emphasis added]), "*[p]ersons who reside in*" an RTF clearly may not be released to parole because they are already "on community supervision" (*id.* § 73 [10] [emphasis added]). Nor does section 73 (10) authorize DOCCS to prescribe a specific period of *mandatory* RTF residence. Thus, respondents properly concede that DOCCS had no authority to require petitioner to continue to reside in an RTF after he obtained suitable housing. In other words, under Correction Law § 73 (10), "DOCCS's authority to keep . . . an offender [subject to SARA] in [RTF] housing ends when the offender successfully identifies or otherwise obtains SARA-compliant community housing" (164 AD3d at 694-695).

As the language of Penal Law § 70.45 (3) and Correction Law § 73 (10) demonstrates, the two provisions serve entirely different purposes and, thus, are not in tension with each other. Penal Law § 70.45 (3) permits DOCCS to hold a sex offender in an RTF for up to six months and require participation in RTF programming. On the other hand, Correction Law § 73 (10) authorizes DOCCS to provide an offender with temporary housing so that the offender can avoid violating a PRS term mandated by the legislature and having delinquency time imposed (*see* Penal Law § 70.45 [1] ["[A] violation of any condition of supervision occurring at any time during such period of post-release supervision shall subject the defendant to a further period of imprisonment up to the balance of the remaining period of post-release supervision, not to exceed five years."]). So read, the statutes are not in conflict because they involve different types of authority that the legislature has granted to DOCCS—a mandatory, fixed term in an RTF versus temporary housing in an RTF that ends when a SARA-compliant residence is located.

III.

Acceptance of petitioner's alternative interpretation of the statutes at issue would lead to absurd results. Moreover, that interpretation conflicts with both the legislative intent underlying Penal Law § 70.45 (3) and the statutory scheme governing the placement of sex offenders in shelters.

If the statutes are read as eliminating DOCCS's authority to provide housing in RTFs to sex offenders subject to SARA beyond the initial six-month period immediately following release to PRS, DOCCS would be required to release those offenders into the community regardless of whether they have SARA-compliant housing. However, as explained in this Court's decision in *Matter of Johnson v Superintendent* (___ NY3d ___, ___ [decided today]), the residency requirement is "a mandatory condition of" release to PRS for sex offenders subject to SARA (Executive Law § 259-c [14]), and such offenders are subject to immediate reincarceration if they violate that condition. Of course, we must "'interpret . . . statute[s] so as to avoid an unreasonable or absurd application of the law'" (*Lubonty v U.S. Bank N.A.*, 34 NY3d 250, 255 [2019], quoting *People v Garson*, 6 NY3d 604, 614 [2006]). That petitioner's interpretation of the provisions at issue would require DOCCS to release to the community individuals who would be in violation of SARA's housing restrictions and, therefore, potentially subject to imprisonment (*Matter of Johnson v Superintendent,* ___ NY3d ___ [decided today]) is, in itself, sufficient reason to reject that construction of the statutes because such a result would be absurd.

In addition, petitioner's interpretation of Penal Law § 70.45 (3) conflicts with the legislative intent underlying its enactment. Although section 70.45 (3) generally requires

the Board of Parole to establish conditions of PRS in the same manner that it establishes conditions for those on parole or conditional release, that provision goes on to state "provided that, notwithstanding any other provision of law," the Board may require transfer of a person on PRS to an RTF and participation in its programs—which are normally assigned to inmates (*see* Correction Law § 73 [3])—for up to the first six months immediately following release from the underlying term of imprisonment. Petitioner argues that this same language in Penal Law § 70.45 (3)—read together with an assumed legislative grant of authority in Correction Law § 73 (10) to indefinitely confine those subject to every other form of community supervision—should be interpreted as evincing the legislature's intent to grant those on PRS "a legal entitlement" to a form of community supervision that is more *lenient* than other forms of community supervision. However, this reading is not supported by the legislative history underlying Penal Law § 70.45 (3). That provision was added as part of Jenna's Law, named after a nursing student who was murdered, which eliminated parole for first-time violent felony offenders and created PRS to promote rehabilitation (*see* Governor's Approval Mem, Bill Jacket, L 1998, ch 1 at 5-6 [emphasizing the need for supervision to promote rehabilitation of violent felons and prevent violent crime]; Letter from R. Giuliani, *id.* at 13 [stating that, without the reforms, then-current law "devalue[d] the severity of the sentences that have been imposed"]). The legislature's purpose in enacting Jenna's Law was to "advanc[e] a comprehensive series of reforms, including tough new penalties for violent crime and *stringent* [PRS] . . . [to] make New York's communities safer" (Bill Mem, Bill Jacket, L 1998, ch 1 at 7 [emphasis added]). Even if "the plain meaning" of Penal Law § 70.45 (3) and Correction Law § 73

(10) could support an interpretation of those provisions as treating PRS as a more lenient form of community supervision—which it cannot—that interpretation would produce "an unreasonable [result] plainly at variance with the policy of the legislature as a whole" in enacting section 70.45 (3) (*see New York State Bankers Assn. v Albright*, 38 NY2d 430, 437 [1975] [internal quotation marks omitted]).

The interpretation of Correction Law § 73 (10) urged by petitioner and the dissenters also would undercut the statutes governing placement of indigent sex offenders in shelters. As we explained in *Gonzalez*:

> "By statute and regulation, for the indigent sex offender, it is the local Department of Social Services (DSS) that has the obligation to determine the placement of level two and three sex offenders in shelters (*see* Social Services Law § 20 [8] [b]; 18 NYCRR 352.36 [b]). Through this scheme, the legislature required DSS, in placing the sex offender in shelters, to consider factors other than the mere availability of shelter, *including the "investigation and approval of such placement by [DOCCS]"* for public safety reasons (Social Services Law § 20 [8] [b] [v]; Correction Law § 203 [1]; Executive Law § 243 [4]). The legislation requiring the agencies to consider such factors was intended, in part, to specifically address the warehousing of level two and three sex offenders residing in SARA-compliant housing in concentrated locations and the resulting risk to public safety in those neighborhoods (L 2008, ch 568)"

(32 NY3d at 473 [emphasis added]). Under the interpretation of petitioner and the dissenters, either DOCCS would be required to approve residences that do not comply with SARA or DSS would be required to ignore DOCCS's disapproval of the proposed residences for offenders, in violation of the statutory scheme and *Gonzalez*.

In sum, the Appellate Division properly rejected petitioner's interpretation of Penal Law § 70.45 (3) and Correction Law § 73 (10) because that interpretation turns on a purported conflict between those two statutes that does not exist, would lead to absurd results, and is contrary to both the legislature's purpose in enacting section 70.45 (3) and the statutory scheme governing the placement of indigent sex offenders in shelters. Finally, we note that petitioner's remaining claims are not preserved for our review. Accordingly, the order of the Appellate Division should be affirmed, without costs.

FAHEY, J. (dissenting):

The authority of the State to confine a sex offender at a residential treatment facility (RTF) during postrelease supervision (PRS) is restricted by the six-month limitation of Penal Law § 70.45 (3). I disagree with the attempt to impress Correction Law § 73 (10)

into service as a substitute authorization for potentially indefinite confinement of sex offenders and I respectfully dissent.

## I.

In 2014, petitioner Chance McCurdy was convicted of attempted sexual abuse in the first degree and sentenced to three years' imprisonment to be followed by five years' PRS. He satisfied his prison sentence while in local custody. McCurdy had been designated a sexually violent level three sex offender and was considered to be subject to the requirement of the Sexual Assault Reform Act (SARA) that he not live within 1,000 feet of a school (*see* Executive Law § 259-c [14]; Penal Law § 220.00 [14] [b]; *People v Diack*, 24 NY3d 674, 682 [2015]).[1] He was unable to identify a SARA-compliant residence. After McCurdy was designated for release to PRS, the New York State Department of Corrections and Community Supervision (DOCCS) confined him in the RTF at Fishkill Correctional Facility, invoking its authority under Penal Law § 70.45 (3) to "impose as a condition of [PRS] that for a period not exceeding six months immediately following release from the underlying term of imprisonment the person be transferred to and participate in the programs of [an RTF]."

---

[1] There is some question about whether Executive Law § 259-c (14) applies, by its terms, to a sex offender who is serving PRS after fully serving their sentence (*see* Brief of Amici Center for Appellate Litigation, Appellate Advocates, and Chief Defenders Association of New York; *see also* Penal Law § 70.40 [2] [defining conditional release]). McCurdy concedes that he has not preserved any such argument. Consequently, the issue is not before the Court.

After McCurdy was released to a SARA-compliant residence, he committed curfew violations and his PRS was revoked. In July 2015, McCurdy was once more unable to find a SARA-compliant residence, and DOCCS again confined McCurdy in the RTF at Fishkill Correctional Facility. By now, however, more than six months had elapsed since McCurdy's release from the underlying term of imprisonment, and this time DOCCS invoked a different statute, Correction Law § 73 (10), which provides, with no temporal limitations, that DOCCS "is authorized to use any [RTF] as a residence for persons who are on community supervision."

In a habeas petition, McCurdy challenged this second transfer to Fishkill Correctional Facility, arguing that DOCCS's authority to transfer a SARA-restricted individual to serve PRS at an RTF is restricted by the six-month limitation of Penal Law § 70.45 (3). McCurdy did not seek immediate release, but instead asked for an order directing DOCCS to place him in, or on a waiting list for, SARA-compliant shelter accommodation in New York City.

Supreme Court converted McCurdy's habeas proceeding to a declaratory judgment action and ruled in his favor, granting his petition to the extent of ordering DOCCS to either place McCurdy in a SARA-compliant New York City Department of Homeless Services (NYCDHS) facility or assign him to a waiting list for such a facility, based on the date of his second transfer to Fishkill Correctional Facility. The Appellate Division reversed. I would uphold Supreme Court's remedy—the limited remedy McCurdy himself sought—as properly ordered.

II.

Penal Law § 70.45 (3) provides that

> "notwithstanding any other provision of law, the board of parole may impose as a condition of post-release supervision that *for a period not exceeding six months immediately following release from the underlying term of imprisonment* the person be transferred to and participate in the programs of a residential treatment facility as that term is defined in subdivision six of section two of the correction law" (emphasis added).

The statute, enacted in 1998, as part of the newly created PRS scheme, authorized the confinement of "certain violent felony offenders to serve their first six months of supervision following release from prison in a postrelease transition facility" (Letter from Mayor Rudolph W. Giuliani, Bill Jacket, L 1998, ch 1 at 12). The statutory language is unmistakably clear and has been well understood by this Court prior to today. DOCCS may order a person serving PRS to be confined in an RTF for *no more than six months* after release from the underlying term of imprisonment (*see e.g. People v Catu*, 4 NY3d 242, 245 [2005] [stating that "postrelease supervision may require *up to six months* of participation in a residential treatment facility immediately following release from the underlying term of imprisonment"] [emphasis added]).

The majority holds that an earlier statute, Correction Law § 73 (10), originally enacted in 1970, provides DOCCS with authority to hold sex offenders beyond six months. That proposition lacks any support. Assuming for the sake of argument that Correction Law § 73 (10) was originally intended to permit long-term confinement of individuals who are on community supervision, any such unrestricted authorization was abrogated by the enactment of Penal Law § 70.45 (3) in 1998. That statute clearly instructed that

"*notwithstanding any other provision of law*, [DOCCS] may impose as a condition of post-release supervision that for a period not exceeding six months immediately following release from the underlying term of imprisonment the person be transferred to and participate in the programs of [an RTF])" (Penal Law § 70.45 [3] [emphasis added]). "The meaning of the statute's 'notwithstanding' clause is plainly understood and clearly supersedes any inconsistent provisions of state law" (*Matter of State of New York v John S.*, 23 NY3d 326, 341 [2014] [some internal quotation marks omitted]). Moreover, a "well-established rule of statutory construction provides that a prior general statute yields to a later specific or special statute" (*Dutchess County Dept. of Social Servs. ex rel. Day v Day*, 96 NY2d 149, 153 [2001] [internal quotation marks omitted]). In this instance, Penal Law § 70.45 (3), dealing specifically with the duration of confinement of individuals on PRS in RTFs, superseded the more general Correction Law § 73 (10) to the extent it is inconsistent.

III.

It is true that Correction Law § 73 (10) was significantly amended in 2011. That amendment, however, lends no support to the majority's analysis.

The history of the statute is instructive. As originally enacted in 1970, Correction Law § 73 (10) permitted "[t]he commissioner of correction and the chairman of the board of parole . . . *to enter into an agreement* for the use of any residential treatment facility as a residence for persons who are on parole or conditional release" (L 1970, ch 476 [emphasis added]). The law belonged to the era before the Department of Correctional Services and the Division of Parole were merged and became DOCCS.

After the two agencies merged to form DOCCS in 2011, there was no longer any need for a statute authorizing correction and parole agencies to contract for the use of a correction facility. Accordingly, the statutory language was changed in 2011 to acknowledge the broad authority of DOCCS to use its own correctional facilities as RTFs for temporarily housing persons on parole or PRS. The amended statute gave DOCCS authority "to use any residential treatment facility as a residence for persons who are on community supervision" (Correction Law § 73 [10]), a term that includes the supervision of individuals on PRS (*see* Correction Law § 2 [31]). The legislative history of the 2011 amendment illuminates the intent behind this amendment to Correction Law § 73 (10). Clearly, the overall purpose of the bill, as relevant here, was "to amend the correction law and the executive law, in relation to merging the department of correctional services and division of parole into [DOCCS]" (Message of Governor, Bill Jacket, L 2011, ch 62, at 7-8; Senate Introducer's Mem in Support, Bill Jacket, L 2011, ch 62, at 14).

Notably, no evidence exists in the legislative history that the legislature, when it amended Correction Law § 73 (10) in 2011 to take into account the merger that formed DOCCS, intended to permit placement of sex offenders in an RTF for longer than six months. There is no reference to the six-month restriction, either in the statute or in the Bill Jacket. Moreover, as of 2011, the legislature would not have had the understanding that any problem existed in regard to sex offenders that required remedying. At that time, DOCCS routinely released sex offenders to shelters that were within 1,000 feet of a school, taking the position that shelter housing was exempt from SARA (*see e.g. People ex rel. Johnson v Supt., Fishkill Corr. Facility*, 47 Misc 3d 984, 987 [Sup Ct, Dutchess County

2015] ["until recently, (DOCCS) had placed registered sex offenders at (the Bellevue men's homeless shelter) despite the fact that it is not SARA-compliant"]).

In short, there is no evidence that Correction Law § 73 (10) was intended to contravene Penal Law § 70.45 (3) and permit placement of sex offenders in an RTF for longer than six months. Penal Law § 70.45 (3) remains the operative statute in this context. That statute expressly imposes a six-month restriction, and nothing in the plain language or legislative history of the amended section 73 (10) points to any intent to supersede the earlier statute or create an exception to its rule.

Correction Law § 73 (10) contains no temporal limitations, making it an inviting statute for DOCCS to cite when confining individuals on PRS. Encouraged by the way in which the parties have framed the appeal, the majority supposes that DOCCS would be obliged to release a sex offender as soon as they have identified SARA-compliant housing, because "DOCCS ha[s] no authority to require petitioner to continue to reside in an RTF after he obtained suitable housing" (majority op at 12). While this concession is an important one, which DOCCS must abide by, the limitation is found nowhere in Correction Law § 73. The reason for the lack of a time limit is clear. There is no mention of temporal duration in Correction Law § 73 (10) because the statute was not intended to serve as a standalone authorization for confining individuals who are on PRS.

Ultimately, the majority's reading excises the unmistakable temporal limit from Penal Law § 70.45 (3). In doing so, the majority violates the long-standing principle of statutory construction that "unambiguous language should be construed pursuant to its plain meaning . . . , giving effect to each component and avoiding a construction that treats

a word or phrase as superfluous" (*Matter of Lemma v Nassau County Police Officer Indem. Bd.*, 31 NY3d 523, 528 [2018]). This reading renders the statute meaningless. Indeed, if Correction Law § 73 (10) were always available as a justification for confining a sex offender who is serving PRS, there would be no reason for DOCCS to invoke Penal Law § 70.45 (3) at all. It is true that a sex offender confined under Penal Law § 70.45 (3) must "participate in the programs of" the RTF (Penal Law § 70.45 [3]), but the record is devoid of any evidence of a systematic difference between the manner in which McCurdy was treated when confined under Penal Law § 70.45 (3) and when confined under Correction Law § 73 (10).

## IV.

The majority gives DOCCS permission to ignore the six-month limitation of Penal Law § 70.45 (3). I cannot agree with this rewriting of the statutory scheme. I would reverse, and uphold Supreme Court's alternative remedy, which required that McCurdy be assigned to a waiting list for a SARA-compliant facility, as properly ordered.

Order affirmed, without costs. Opinion by Judge Stein. Chief Judge DiFiore and Judges Garcia and Feinman concur. Judge Fahey dissents and votes to reverse in an opinion in which Judges Rivera and Wilson concur.

Decided November 23, 2020